COMMONWEALTH *vs.* MARGARET STONE.

Bristol.    March 7, 1938. — April 4, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, DOLAN, & COX, JJ.

*Abortion.    Evidence,* Presumptions and burden of proof.    *Pleading, Criminal,* Indictment.    *Practice, Criminal,* Variance.

Conviction under an indictment charging that the defendant "with intent to procure" a miscarriage of a woman "did unlawfully use a certain instrument upon" her body, required proof beyond a reasonable doubt of the use of an instrument, and was not warranted where,

although there was evidence that the defendant unlawfully used some means to procure the miscarriage, the only evidence as to the use of an instrument was testimony by a medical examiner respecting an autopsy performed ten days after the alleged act of the defendant which left doubt as to whether an instrument was used; the provision of G. L. (Ter. Ed.) c. 277, § 35, as to variance was not applicable.

INDICTMENT, found and returned on November 5, 1937, charging that the defendant "with intent to procure the miscarriage of Margaret Harlan, did unlawfully use a certain instrument upon" her body "and in consequence thereof" she died.

The trial in the Superior Court was before *Dowd*, J.

In this court, the case was submitted on briefs.

*T. C. Crowther*, for the defendant.

*F. E. Smith*, Assistant District Attorney, for the Commonwealth.

DOLAN, J.   The defendant was convicted of unlawfully using an instrument on the body of Margaret Harlan with the intent to procure her miscarriage, in consequence of which she died.   G. L. (Ter. Ed.) c. 272, § 19.   The case comes to this court by appeal with a summary of the record, a transcript of the evidence and an assignment of errors under G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

The first error assigned is based on the denial by the judge of the defendant's motion, made at the close of the evidence, that the jury be directed to return a verdict of not guilty.   The specific grounds upon which the claim of error rests are that there was no evidence warranting the jury in finding that the defendant did unlawfully use an instrument as charged upon the body of Margaret Harlan with intent to procure her miscarriage, nor warranting the jury in finding that they were convinced beyond a reasonable doubt that an instrument "was" used upon the body of the deceased by anyone; and that there was no evidence which would warrant the jury in finding that the defendant was guilty of the crime charged in the indictment.

The evidence presented at the trial was sufficient to establish beyond a reasonable doubt that the defendant, with intent to procure the miscarriage of Margaret Harlan,

unlawfully used some means or other to that end, in consequence of which the latter died. There was, however, no sufficient evidence to establish beyond a reasonable doubt that the defendant with the intent to procure the miscarriage used an instrument upon the body of Mrs. Harlan as charged in the indictment, unless the testimony given by the medical examiner is sufficient to establish the fact of the use of an "instrument" upon her body.

The medical examiner performed an autopsy on the body of Mrs. Harlan on August 24, 1937, on which day she died. Whatever means the defendant used to bring about the miscarriage were employed by her on or about August 14, 1937. The medical examiner testified that he found conditions which would be consistent with an abortion; that there are various methods of procuring an abortion; that the organs of the deceased showed a great amount of sloughing due to infection; that the condition was one of acute peritonitis, which would be consistent with an induced abortion; that this condition was extensive, of ten to twelve days duration; that "this acute peritonitis was a consistent and adequate cause for the death of" Mrs. Harlan; that the conditions found would not warrant a conclusion that the abortion was induced or caused by an instrument, "because those changes after two days are so great the sloughing will cause the same changes as . . . [he] found"; that "you couldn't come to a definite conclusion, that it was instrumentally induced"; that the progress was such that in the absence of any puncture "it would be practically impossible to come to the conclusion that it was instrumentally done, yet they [the conditions] are consistent with the introduction of something from without"; that "There was no puncture or perforation . . . no proof of any instrument"; that the infection was caused from without and that the introduction of some foreign substance or instrument was a consistent and adequate cause of the condition he observed; and that the condition was not consistent with an abortion induced by the use of drugs. The testimony of the medical examiner that it would be almost impossible under the conditions as he

found them to come to the conclusion that the abortion was instrumentally procured and that such conditions would not warrant that conclusion, we think, is not over-borne by his testimony that "this infection was induced from without" and that it "was consistent with the introduction of some foreign substance or instrument." Evidence that the condition found was consistent with the introduction of an instrument into the body of the deceased and of the performance of a criminal operation is "no affirmative evidence to prove it." *Commonwealth* v. *Polian,* 288 Mass. 494, 501, and cases cited. This would follow also from the similar rule with regard to such evidence in civil cases where the burden of proof is by but a fair preponderance of the evidence. See *DeFilippo's Case,* 284 Mass. 531, 534, 535; *Halnan* v. *New England Telephone & Telegraph Co.* 296 Mass. 219, 223; *Robinson's Case,* 299 Mass. 499. Nor is the testimony of the medical examiner that the condition was not consistent with an abortion induced by the use of drugs evidence to prove the unlawful use of an instrument with intent to procure the abortion. That testimony was not inconsistent with his prior testimony that there are various methods of procuring an abortion. In the case of *Commonwealth* v. *Polian,* 288 Mass. 494, 500, a medical expert expressed the opinion without objection that the abortion had been produced by an instrument, and in this respect that case is distinguishable from the present case. We are of opinion that the evidence would not warrant the jury in finding beyond a reasonable doubt that the miscarriage in question was induced by the defendant by the use of an instrument upon the body of the deceased.

The remaining question is whether as matter of law, under the form of the indictment, the jury could find the defendant guilty of having unlawfully procured the miscarriage of the deceased no matter by what means.

G. L. (Ter. Ed.) c. 272, § 19, provides that "Whoever, with intent to procure the miscarriage of a woman, unlawfully administers to her, or advises or prescribes for her, or causes any poison, drug, medicine or other noxious thing

to be taken by her or, with the like intent, unlawfully uses any instrument or other means whatever, or, with like intent, aids or assists therein, shall, if she dies in consequence thereof, be punished by imprisonment in the state prison for not less than five nor more than twenty years; and, if she does not die in consequence thereof, by imprisonment in the state prison for not more than seven years and by a fine of not more than two thousand dollars." The indictment in the instant case is in the exact form provided for by G. L. (Ter. Ed.) c. 277, following § 79 under the title of "Abortion. (2)." Form (1) under that title is designed to be used in case of the unlawful administration of any poison, drug, medicine or "other noxious thing" to a woman, or the advising or prescription of it for her, or the causing of it to be taken by her, with the intent to procure a miscarriage. Form (3) is devised to be used where "other means" are used with like intent. In *Commonwealth* v. *Sinclair*, 195 Mass. 100, 106, it is said: "The gist of the offence charged is the use of an instrument with the specific intent stated; but the description of the instrument and the mode of its use are material to describe and identify the charge"; and at page 107 the court also said: "Accordingly the name or description of the instrument and the manner of its use generally will be essential." In that case, a motion for a bill of particulars having been denied, the exceptions of the defendant who had been convicted were sustained. "The grand jury was required to state the means used to bring about the abortion, with as much certainty as the nature of the evidence before them would warrant. . . . This particularity of allegation will be *prima facie* of material service to the person indicted in enabling him to understand the charge and to prepare his defence." (Page 107.) In *Commonwealth* v. *Donoghue*, 266 Mass. 391, where the indictment under consideration was in the same form as in the case at bar, at page 397, the court said: "The description of the instrument and the manner of its use was material to a complete description of the offence charged, and its absence was not excused by an averment that the description was to the grand jury unknown." In that case, however,

the "material deficiency" was held to have been cured by the bill of particulars which was filed, in which the Commonwealth answered that its contention was that the miscarriage was procured by the use of an instrument "or other means." and that it was unable to "specify the exact nature of the instrument or other means." (Page 397.) While in the case at bar the defendant did not object to the form of the indictment or move for a bill of particulars, we think that it cannot be said as matter of law that she waived her right to insist that the crime charged be proved to have been committed in the manner charged, that being the "gist of the offence" and a material averment. This view is fortified by a consideration of the provisions of G. L. (Ter. Ed.) c. 277, § 79, before referred to, following which the several respective forms are provided under the title of abortion, with reference to the respective means which are to be alleged as having been used. That the Commonwealth may not be at a disadvantage in the matter of proof where knowledge of the actual means is not had, an indictment may be framed containing allegation of all the means set forth in the statute defining the crime as well as of unlawful means which are unknown to the grand jury. See *Commonwealth* v. *Brown*, 14 Gray, 419; *Commonwealth* v. *Brown*, 121 Mass. 69; and *Commonwealth* v. *Follansbee*, 155 Mass. 274. Where none of the forms provided for in the statute are applicable, they need not be used. G. L. (Ter. Ed.) c. 277, § 79. In the instant case, however, the grand jury having chosen to indict the defendant in the words of the second form suggested in the section just referred to, we think that the Commonwealth had the burden of proving beyond a reasonable doubt that the crime charged to the defendant was actually committed in the manner specified by the grand jury. "Any allegation, which is descriptive of the identity of that which is legally essential to the offence charged in the indictment, must be proved as made." *Commonwealth* v. *Brailey*, 134 Mass. 527, 529. In the case of *Commonwealth* v. *Follansbee*, 155 Mass. 274, where an indictment charging the unlawful procurement of a miscarriage contained several counts, including one that the

miscarriage was procured by the use of an instrument, and another that it was procured by the use of "some unlawful means, to the said jurors unknown," the court said at page 277, "The several counts of the indictment set forth separate offences, which were properly joined in one indictment, and upon one or more of which it was competent for the jury to find the defendant guilty." See also *Commonwealth* v. *Brown*, 121 Mass. 69, 82; *Commonwealth* v. *Corkin*, 136 Mass. 429, 430, 431.

We think that it cannot be said that the allegation in the indictment, that the defendant unlawfully used an instrument upon the body of the deceased with the intent to procure her miscarriage, was not essentially descriptive of the offence, or that the discrepancy between the allegation and proof was not a material variance. See *Commonwealth* v. *Luscomb*, 130 Mass. 42, 44. Without the allegation of "an instrument," the indictment in this case would allege no crime, and the provision of G. L. (Ter. Ed.) c. 277, § 35, that "A defendant shall not be acquitted on the ground of variance between the allegation and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence," does not apply. The case of *Commonwealth* v. *Drake*, 124 Mass. 21, is distinguishable, as in that case there was evidence of the use of an instrument.

We are of opinion that the burden of proof was on the Commonwealth to establish beyond a reasonable doubt that the defendant, with intent to procure the miscarriage of the deceased, "did unlawfully use a certain instrument upon the body" of the deceased; that the evidence adduced at the trial was not sufficient to prove the commission of the offence in the manner charged in the indictment; and that the denial of the defendant's motion for a directed verdict of not guilty was prejudicial error.

*Judgment reversed.*

*Verdict set aside.*

*Case remanded to Superior Court.*